**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JOSE A. RUIZ-JUSTINIANO, | |
| Plaintiff, | |
| v. | CIVIL NO.: 16-1526 (MEL) |
| UNITED STATES POSTAL SERVICE, et al., | |
| Defendants. | |

## OPINION AND ORDER

José A. Ruiz-Justiniano ("Plaintiff") filed an amended complaint on September 2, 2016, against Megan J. Brennan, in her official capacity as Postmaster General and Chief Executive Officer of the United States Postal Service, the United States Postal Service (hereinafter "Postal Service" or "USPS"), and the United States of America (collectively "Defendants"). ECF No. 20. Plaintiff alleged that Defendants violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; 42 U.S.C. § 1983 ("Section 1983"); 42 U.S.C. § 1981 ("Section 1981); the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311, et seq.; retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3); and the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1). Pending before the court is Defendants' motion for summary judgment and Plaintiff's cross motion for partial summary judgment. ECF Nos. 26; 40. Defendants argue in their motion for summary judgment that Title VII and the ADEA are the exclusive and preemptive remedies for Plaintiff's discrimination claims and thus all other claims should be dismissed, that Plaintiff's claims are restricted to those that he argued at the agency level, and that Plaintiff fails to establish

the necessary facts under each statute to survive this motion for summary judgment. ECF No. 28. In his cross motion for summary judgment, Plaintiff denies the arguments made within Defendants' motion for summary judgment and asks the court to enter partial summary judgment for a prima facie case for his claims under the EPA, ADEA, USERRA, Title VII, and retaliation under both Title VII and the FLSA. ECF Nos. 40; 41. Defendants subsequently filed a reply to Plaintiff's opposition and also a response to Plaintiff's cross motion for summary judgment. ECF Nos. 52; 53. Plaintiff then filed a combined "sur-reply" to Defendants' reply in opposition, and a reply to Defendants' opposition to the cross motion for summary judgment. ECF No. 61.

## I.      FRCP 12(b)(6) – FAILURE TO STATE A CLAIM

While Defendants have filed a motion for summary judgment, this motion contains multiple arguments imbedded that should have been framed within a motion to dismiss. First, Defendants argue that Plaintiff's exclusive remedies for discrimination in this case are under Title VII and the ADEA, thus all other claims should be dismissed. ECF No. 28, at 12. Second, Defendants argue that Plaintiff's FTCA claim is preempted by various statutes. Id. at 15–16. Because the standards of review for a motion to dismiss and a motion for summary judgment are different, each argument will be evaluated under the appropriate standard.

### A. Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege 'a plausible entitlement to relief.'" Rodríguez–Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'"

Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

This requires a two-pronged approach. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013) (citing Morales–Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the court will "take the complaint's well-pled (*i.e.,* non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55 (citing Ocasio–Hernández, 640 F.3d at 12). In addition to the complaint, the court can consider "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Id. (quoting Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)). "We appropriately draw on our 'judicial experience and common sense' in evaluating a complaint, but we may not disregard factual allegations 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Manning v. Boston Medical Center Corp., 725 F.3d 34, 43 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 679; Twombly, 550 U.S. at 556).

**B. Sex Discrimination Claims under Sections 1981 and 1983**

Plaintiff has brought forth three statutes in his amended complaint in which he seeks relief for sex discrimination: Title VII, Section 1983, and Section 1981. ECF No. 20, at 11. The First Circuit has stated that in the federal employment context "[t]he Supreme Court has indicated that where the gravamen of the claim is Title VII discrimination, the only remedy available is under

Title VII." Rivera-Rosario v. U.S. Dep't of Agric., 151 F.3d 34, 38 (1st Cir. 1998) (citing Brown, 425 U.S. 820). Here, Plaintiff is restricted to his Title VII claim as he is a federal employee under Title VII because he works for the United States Postal Service. See 42 U.S.C. § 2000e-16. "Title VII provides an exclusive remedy for claims of discrimination in federal employment and that, therefore, a plaintiff cannot bring a section 1983 claim which is based on the same facts as the Title VII claim." Rodríguez-López v. Velazco-González, Civ. No. 08-1212 (GAG), 2009 WL 1108804, at *3 (D.P.R. Apr. 23, 2009); see also Castro v. United States, 584 F. Supp. 252, 259 (D.P.R. 1984) (dismissing plaintiffs' section 1983 claim because "[s]ection 717 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, is the exclusive judicial remedy available to a federal employee complaining about job-related discrimination . . . . Therefore, plaintiffs, as federal employees covered by Title VII, may not sue under any other federal statute." (citations omitted)), aff'd, 775 F.2d 399 (1st Cir. 1985).

For the same reasoning, "to the extent that Plaintiff proffers employment discrimination claims premised on 42 U.S.C. § 1981, such causes of action are dismissed." Ríos v. Rumsfeld, 323 F. Supp. 2d 267, 272 (D.P.R. 2004); see also Jefferson v. Gates, Civ. No. CA 09-537 ML, 2010 WL 2927529, at *13 (D.R.I. July 2, 2010) (finding "that Plaintiff's claim under § 1981 is barred" since Title VII, 42 U.S.C. § 2000e-16, "provides the exclusive judicial remedy for discrimination claims in federal employment."), report and recommendation adopted, No. CA 09-537 ML, 2010 WL 2927528 (D.R.I. July 22, 2010). Here, Plaintiff's Title VII, section 1983, and section 1981 claims are based on the same facts for alleged discrimination based on sex; therefore, Plaintiff's exclusive judicial remedy is through Title VII. Thus, Plaintiff's section 1983 and section 1981 sex discrimination claims are dismissed with prejudice.

## C.     FTCA Claim

Plaintiff has alleged in his amended complaint a claim under the FTCA in that "Galindo, Calserrada, Delgado and O'Keefe" engaged in wrongful acts "on behalf of the Postal Service and of the United States of America, and while acting within the scope of their office or employment, inflicted personal and emotional injuries on Plaintiff." ECF No. 20, ¶ 83. Plaintiff's amended complaint does not make it clear on what tort or actions Plaintiff is relying on for his FTCA claim. However, Plaintiff's memorandum in opposition states that it is a claim for intentional infliction of emotional distress. ECF No. 41, at 24. Defendants cite to various cases and statutes and argue that "[t]he remedial scheme . . . thus preempts a postal employee's tort- based claims under the FTCA." ECF No. 28, at 16. It is unclear whether Defendants contend that the Postal Reorganization Act ("PRA"), the Civil Service Reform Act ("CSRA"), Title VII, or a combination of all three make up the remedial scheme that preempts Plaintiff's FTCA claim. Nonetheless, the cases that Defendants cite to provide precedent indicating that Plaintiff's claim for relief under the FTCA is barred by the CSRA.

"Federal-sector employment claims typically take one of two paths." González v. Vélez, 864 F.3d 45, 51 (1st Cir. 2017). The first path is under the CSRA, "which constitutes 'a comprehensive system for reviewing personnel action[s] taken against federal employees.'" Id. (quoting United States v. Fausto, 484 U.S. 439, 455 (1988)). The second path is under certain claims that "are excluded from the CSRA's monopoly over federal-sector employment actions." Id. "In particular, the statute 'shall not be construed to extinguish or lessen' rights or remedies available under certain antidiscrimination statutes." Id. (citing 5 U.S.C. § 2302(d)).

"Federal employees alleging employment-related torts subject to the CSRA may not bring actions under the Federal Tort Claims Act." Soto v. Runyon, 13 F. Supp. 2d 215, 224 (D.P.R.

1998) (citation omitted); <u>Martin v. Runyon</u>, 14 F. Supp. 2d 174, 177 (D.P.R. 1998) (dismissing a USPS employee's FTCA claim because "employment controversies within the Postal Service are generally governed by the Postal Reorganization Act ("PRA") . . . . The PRA incorporates Chapter 75 of the Civil Service Reform Act . . . . The remedial scheme thus created preempts a postal employee's tort-based claims under the FTCA." (citations omitted)); <u>Kennedy v. U.S. Postal Serv.</u>, 145 F.3d 1077, 1078 (9th Cir. 1998) (dismissing a former USPS employee's claim under the FTCA and holding that "[f]ederal employees alleging employment-related tort claims subject to the CSRA may not bring an action under the FTCA . . . . Because the relevant provisions of the CSRA and the PRA constitute a comprehensive scheme governing employment relations, employment-related tort actions under the FTCA are precluded." (citations omitted)); <u>Kroll v. United States</u>, 58 F.3d 1087, 1092 (6th Cir. 1995) (affirming the district court's decision "that the comprehensive labor relations scheme of the PRA preempted any tort-based claim that [plaintiff] might be able to argue was cognizable under the FTCA."); <u>Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.</u>, 940 F.2d 704, 709 (D.C. Cir. 1991) (holding "that dismissed probationary postal employees may [not] bring suit under the FTCA."); <u>Rosenbaum v. United States</u>, Civ. No. 3:08-CV-00014-RLH, 2008 WL 11335186, at *5 (D. Alaska Aug. 6, 2008) ("Congress intended to oust state tort law from the realm of federal employment . . . . Both the CSRA and its legislative history show that Congress did not intend that state tort law operate within the interstices of the act . . . . Thus, [f]ederal employees alleging employment-related tort claims subject to the CSRA may not bring an action under the FTCA." (international quotations and citations omitted)).

Here, Plaintiff is alleging an employment related tort that is subject to the CSRA: intentional infliction of emotional distress. <u>Blankenship v. McDonald</u>, 176 F.3d 1192, 1195 (9th Cir. 1999) ("[Plaintiff's] complaint also alleged state tort claims for intentional infliction of

emotional distress. Blankenship's state claims are preempted by the CSRA."); see also Gindi v. Norton, 216 F. Supp. 3d 199, 203 (D. Mass. 2016) ("The purported infliction of emotional distress and assault occurred at work with respect to work-related emails and a threatened poor performance review. They are precisely the sort of work-related incidents that the CSRA preempts." (citations omitted)); Steele v. United States, 19 F.3d 531, 533 (10th Cir. 1994) (affirming the district court's decision to dismissing Plaintiff's case as "all of plaintiff's claims[, which included a claim for intentional or reckless infliction for emotional distress], clearly complain of actions prohibited by the CSRA."). Thus, Plaintiff's FTCA claim is preempted by the CSRA and is hereby dismissed with prejudice.

### D. Title VII and ADEA

Additionally, Plaintiff's amended complaint brings claims against three Defendants. Title VII requires that "the head of the department, agency, or unit, as appropriate, shall be the defendant" in a civil action. 42 U.S.C.A. § 2000e-16(c); see also Soto v. U.S. Postal Serv., 905 F.2d 537, 539 (1st Cir. 1990); Melendez-Morales v. Dep't of Army, Civ. No. CIV.08-1298 DRD BJM, 2011 WL 925561, at *3 (D.P.R. Jan. 28, 2011) (citing Cannon–Atkinson v. Cohen, 95 F.Supp.2d 70, 76 (D.P.R.2000)), report and recommendation adopted, Civ. No. CIV.08-1298 DRD, 2011 WL 925562 (D.P.R. Mar. 17, 2011). "In claims brought against the Postal Service, the Postmaster General is the only properly named defendant." Layme v. Matias, 177 F. Supp. 2d 111, 114 (D.P.R. 2001) (citing Soto, 905 F.2d at 539; Rys v. USPS, 886 F.2d 443, 445 (1st Cir.1989)). "A district court should dismiss claims brought against all other defendants, including the U.S. Postal Service and the local postmaster." Soto, 905 F.2d at 539 (citing Lamb v. United States Postal Service, 852 F.2d 845, 846–47 (5th Cir.1988)); Layme, 177 F. Supp. 2d at 114 ("Plaintiff names five defendants, including the United States Postal Service, but fails to name the

Postmaster General. Accordingly, the Court finds that Layme sued the wrong parties and that all Title VII claims brought against all other defendants, including the U.S. Postal Service and the local postmaster, should be dismissed.").  Thus, the only proper Defendant for Plaintiff's Title VII claims are the Postmaster General, Megan J. Brennan.

Moreover, "the only proper defendant in suits under the ADEA is 'the head of the department, agency, or unit, as appropriate.'"  Linares-Rosado v. Torres-Medina, Civ. No. 11-1659 JAF, 2012 WL 5199615, at *4 (D.P.R. Oct. 22, 2012) (quoting Honeycutt v. Long, 861 F.2d 1346, 1349 (5th Cir.1988)); Mulero-Garcia v. United States, Civ. No. 16-2572 (GAG), 2018 WL 2759393, at *2 (D.P.R. June 6, 2018) ("Hence, similar to Title VII, an employee who alleges discrimination based on age may file a civil action only against the head of department, agency, or unit.  Here, the only proper defendant allowed under Title VII and ADEA is the head of the USPS, Postmaster General Megan J. Brennan. All claims against other Defendants, including the United States . . . are not proper according to the law.").  Consequently, the only proper Defendant for Plaintiff's ADEA claims are the Postmaster General, Megan J. Brennan.

Therefore, all Title VII and ADEA claims against the United States Postal Service and the United States of America are hereby dismissed with prejudice.

## II.     FRCP 12(b)(1) – LACK OF SUBJECT MATTER JURISDICTION

### A.     Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)"), a defendant may move to dismiss an action for lack of subject matter jurisdiction.  "As courts of limited jurisdiction, federal courts have the duty to construe their jurisdictional grants narrowly."  Fina Air, Inc. v. United States, 555 F. Supp. 2d 321, 323 (D.P.R. 2008) (citing Alicea Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998)).  Since federal courts have limited jurisdiction, the party asserting jurisdiction has

the burden of demonstrating the existence of federal jurisdiction. See Murphy v. United States, 45 F. 3d 520, 522 (1st Cir. 1995); Droz-Serrano v. Caribbean Records Inc., 270 F. Supp. 2d 217 (D.P.R. 2003).

Challenges to subject matter jurisdiction through a Rule 12(b)(1) motion may constitute either a facial or a factual challenge. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001); Mercado-Arocho v. United States, 455 F. Supp. 2d 15, 18 (D.P.R. 2006); Rivera de León v. Maxon Engineering Servs., Inc., 283 F. Supp. 2d 550, 554 (D.P.R. 2003). To decide whether a 12(b)(1) motion is a facial or factual challenge, a court must determine whether the motion disputes the complaint's allegations regarding subject matter jurisdiction. Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 162 n.8 (1st Cir. 2007). If the 12(b)(1) motion does not dispute subject matter allegations, then it challenges only the facial sufficiency of the complaint. Id. If the 12(b)(1) motion disputes the subject matter allegations, then it challenges the factual basis for subject matter jurisdiction. Id.

Under a facial challenge, the moving party challenges jurisdiction based on the allegations in the complaint. See Valentin, 254 F.3d at 363; Mercado-Arocho, 455 F. Supp. 2d at 18; Rivera de León, 283 F. Supp. 2d at 554. Thus, "the court must consider all the allegations in the complaint as true, and will not look beyond the face of the complaint to determine jurisdiction." Mercado-Arocho, 455 F. Supp. 2d at 18. A facial attack only requires a court to examine the complaint and determine whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction." Torres-Negrón, 504 F.3d at 162 (quoting Scarfo v. Ginsburg, 175 F.3d 957, 960 (11th Cir. 1999)); see e.g., Fina Air Inc., 555 F. Supp. 2d at 325–28 (examining a facial attack and applying the standard articulated in Torres-Negrón).

Under a factual challenge, "the allegations have no presumptive truthfulness, and the court . . . . [h]as discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Mercado-Arocho, 455 F. Supp. 2d at 18 (citations omitted) (quoting Reynolds v. Nelson, Civ. No. 05-3470-PHX-ROS, 2006 WL 2404364, at *1 (D. Ariz. July 17, 2006)). The analysis changes depending on whether the challenged facts would also decide issues relating to the merits of the case. Torres-Negrón, 504 F.3d at 163. If the challenged facts do involve the merits of the case, the court must use a summary judgment standard and dismiss "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Id. (quoting Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987)). If the challenged facts do not involve the merits of the case, then the court is free to consider evidence and decide the question of its subject matter jurisdiction over the case. Id.

**B.      Plaintiff's Formal E.E.O. Complaint – USERRA Claim**

Defendants make a factual challenge and argue that Plaintiff's only viable claims were those made at the agency level: discrimination on the basis of sex, age, and retaliation. ECF No. 28, at 1–2. Therefore, Defendants argue that Plaintiff's "employment discrimination complaint in federal court is thus limited to the issues presented in Plaintiff's E.E.O. complaint at agency level." Id. at 2.

While not addressed by the parties, the court must first consider whether it has jurisdiction for Plaintiff's USERRA claim. "The purpose of USERRA is to encourage non-career military service, minimize disruption based on this service, and prevent discrimination against service members." Vega-Colón v. Wyeth Pharm., 625 F.3d 22, 25 (1st Cir. 2010) (citing 38 U.S.C. § 4301). Section 4323 provides that "[i]n the case of an action against a private employer by a

person, the district courts of the United States shall have jurisdiction of the action." 38 U.S.C. § 4323(b)(3). However, in the case at hand, Plaintiff has not brought a claim against a private employer but rather the United States Postal Service. As defined by USERRA, "[t]he term 'Federal executive agency' includes the United States Postal Service." 38 U.S.C. § 4303(5). Jurisdiction for the enforcement of rights by Federal executive agencies is provided for in Section 4324. "Section 4324 does not authorize a private USERRA action against the Federal Government, as an employer, in federal district court; rather, it confers jurisdiction upon the Merit Systems Protection Board ("MSPB")." Dew v. United States, 192 F.3d 366, 372 (2d Cir. 1999) (citing 38 U.S.C. § 4324(b); Yates v. MSPB, 145 F.3d 1480, 1483 (Fed.Cir.1998)).

Thus, federal courts have held that there is a of lack jurisdiction when a Plaintiff brings a USERRA claim against a "Federal executive agency" in a federal district court, rather than to the MSPB. Padilla-Ruiz v. United States, 893 F. Supp. 2d 301, 308 (D.P.R. 2012) (granting defendants' motion to dismiss for lack of subject matter jurisdiction on the USERRA claim against federal defendants when plaintiffs' only argument in response did not cite to any case law), aff'd in part, vacated in part on other grounds, remanded, 593 F. App'x 1 (1st Cir. 2015) (unpublished)[1]; Dew, 192 F.3d at 372; Gafford v. McDonald, Civ. No. 4:14-CV-01603-JAR, 2015 WL 4651827, at *4 (E.D. Mo. Aug. 5, 2015) ("Because Plaintiff never presented his claim for discrimination based on his veteran status to the MSPB, the Court must dismiss Plaintiff's USERRA claim for

---

[1] In an unpublished opinion, the First Circuit affirmed in part and vacated in part the decision by the District Court of Puerto Rico. Padilla-Ruiz v. United States, 593 F. App'x 1, 5 (1st Cir. 2015) (unpublished). Plaintiff argues that the "First Circuit disavows District Court's ruling that Padilla had to bring his USERRA claims first before the MSPB but notes that issue was waived because it was not argued on appeal." ECF No. 41. However, the opinion does not indicate that the First Circuit disavowed the opinion of the lower court. Rather, the First Circuit stated that "Padilla does not argue on appeal that the District Court was wrong to rule that, if Padilla could have brought his claims against the federal agencies before the MSPB, he was required to do so. We thus treat any such argument as waived." Padilla-Ruiz, 593 F. App'x at 5 (emphasis in original). The First Circuit thus treated the argument as waived and only remanded in regards to plaintiffs' USERRA and Puerto Rico Law claims against COMTek, a private defendant. Id. at 6.

lack of subject matter jurisdiction." (citing <u>Ziegler v. Kempthorne</u>, 266 F. App'x 505, 506 (8th

Cir. 2008))); <u>Benton v. U.S. E.P.A.</u>, Civ. No. 3:13-CV-0927-D, 2013 WL 4483091, at *2 (N.D.

Tex. Aug. 22, 2013) ("Because [Plaintiff] is suing a federal executive agency [for a USERRA

claim], his recourse is via the MSPB and then to the Federal Circuit. The court therefore grants

defendant's motion to dismiss and dismisses this action without prejudice for lack of subject matter

jurisdiction.").

Moreover, even if this court had jurisdiction over this claim or if this claim was considered

a mixed case,[2] Plaintiff failed to bring forward his USERRA claim at the agency level. See <u>Jackson</u>

<u>v. Fanning</u>, Civ. No. EP-14-CV-130-DB, 2016 WL 11212420, at *5 (W.D. Tex. June 13, 2016)

(holding that the federal district court did not have jurisdiction and that the plaintiff "has not

fulfilled the jurisdictional prerequisites to bring her USERRA claim in district court: she has not

included her USERRA claim in a mixed-case complaint with the Army's EEO office or in a mixed-

case appeal with the MSPB. Therefore, the Court lacks subject matter jurisdiction over her

USERRA claim."). Plaintiff's formal EEO Complaint of Discrimination in the Postal Service

includes claims for age discrimination, sex discrimination, equal pay, and retaliation, but there is

not a claim for discrimination based on his military service. ECF Nos. 27-8, at 3; 39-39, at 3.

Plaintiff even objected to the "accepted issue" of his complaint by the USPS EEO, but he still did

not include a claim for discrimination based on his military service in this objection. ECF No. 27-

---

[2] A "mixed case" is "[w]hen an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination." <u>Kloeckner v. Solis</u>, 568 U.S. 41, 44 (2012) (citing 29 CFR § 1614.302 (2012)). A federal employee can proceed with a mixed case in different ways. <u>Id.</u> at 45. An employee "may first file a discrimination complaint with the agency itself, much as an employee challenging a personnel practice not appealable to the MSPB could do." <u>Id.</u> (citing 5 CFR § 1201.154(a); 29 CFR § 1614.302(b)). "Alternatively, the employee may initiate the process by bringing her case directly to the MSPB, forgoing the agency's own system for evaluating discrimination charges." <u>Id.</u> (citing 5 CFR § 1201.154(a); 29 CFR § 1614.302(b)).

4; 41-2.[3]  See  Dávila v. Potter, 550 F. Supp. 2d 234, 240 (D.P.R. 2007) (holding in a gender discrimination case that "[d]espite Plaintiff amending his affidavit in support of the Information for pre-complaint counseling to include allegations of sex discrimination, these claims were not included in his formal complaint. There is no justifiable excuse for this omission . . . .").  Therefore, the court lacks subject matter jurisdiction over Plaintiff's USERRA claim.  Plaintiff's USERRA claim is dismissed without prejudice.

## III.  MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted).  Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant presents a properly focused motion "averring 'an absence of evidence to support the

---

[3] The United States Postal Service Equal Employment Opportunity "Acceptance for Investigation" letter stated that the specific issues alleged in the formal complaint of discrimination were: "You allege that you have been subjected to discrimination based on Sex (Male), Age (46 . . .), and Retaliation (unspecified) when: On a date to be specified, you became aware the individual hired for Operation Industrial Engineer (Field) EAS-21, in San Juan, PR, Job Posting #74931959, was paid more than you for performing similar work."  ECF No. 27-3, at 1.

nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The plaintiff need not, however, "rely only on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

### B. Uncontested Material Facts[4]

#### i. Operational Industrial Engineer Position

Plaintiff José A. Ruiz-Justiniano is a male born in December of 1968. ECF No. 39, at 10, ¶ 1; ECF No. 53, ¶ 1; 27-1, at 2. Plaintiff was employed by the Postal Service in March 2008 as an Operational Industrial Engineer" ("OIE") and he worked at the San Juan Processing & Distribution Center ("P&DC"). ECF No. 39, at 10, ¶ 1; ECF No. 53, ¶ 1.

An OIE oversees and applies nationwide engineering, standardization, and continuous improvement policies, standards and process to improve service and cost performance through direct involvement in mail processing operations. ECF Nos. 27, ¶ 15; 39, at 5, ¶ 15. The OIE position falls within the Executive and Administrative Schedule ("EAS") of compensation. ECF Nos. 27, ¶ 16; 39, at 5, ¶ 16. Once hired, any salary increases for an OIE are determined by the Postal Service's Pay for Performance Program ("PFP"), which is based on business and individual performance. ECF Nos. 27, ¶ 17; 39, at 5, ¶ 17.

Plaintiff's salary upon being hired as an OIE was $49,950. ECF Nos. 27, ¶ 8; 39, at 4, ¶ 8. For the fiscal year of 2008, Plaintiff received a PFP rating of six, which corresponded to a 1.91% salary increase effective January 17, 2009. ECF Nos. 27, ¶ 18; 39, at 5, ¶ 18. All EAS employees received a similar group rating for that year. ECF Nos. 39, at 5, ¶ 18; 39-2, at 1, ¶ 3. For the fiscal year of 2009, Plaintiff received a PFP rating of three, which corresponded to a 0% salary increase; however, he received a salary adjustment to bring him to the minimum of the salary range for his

---

[4] As multiple causes of action have already been dismissed, the uncontested material facts section only addresses facts related to claims that have not been dismissed. Both Plaintiff and Defendants should be well aware of the Local Rule 56 guiding the exchange of facts under a motion for summary judgment. L.Cv.R. 56 (D.P.R. 2009). Any material facts alleged but not in line with Local Rule 56 were rejected. In situations where the Plaintiff denied a fact but only addressed part of the alleged fact, the remaining portion of the fact was deemed admitted when supported by a record citation by movant. Moreover, at times, both parties denied a fact generally stating a violation of Local Rule 56, Federal Rule of Civil Procedure 56, or a general claim of inadmissible evidence, without articulating their reasoning. In those situations, unless there was a clear, self-evident violation, those facts were deemed admitted if supported by a proper citation and evidence.

position.  ECF Nos. 27, ¶ 19; 39, at 5, ¶ 19.[5]  For the fiscal year of 2010, Plaintiff received a PFP

rating of seven, which corresponded to a 5% salary increase effective January 15, 2011.  ECF Nos.

27, ¶ 20; 39, at 5, ¶ 20.  For the fiscal year of 2011, Plaintiff received a PFP rating of six, which

corresponded to a 0% increase; however, no EAS employee received a salary increase due to the

financial hardship experienced by the Postal Service, which was caused in large part from the

significant decline in the volume of first class mail.  ECF Nos. 27, ¶ 21; 27-18, ¶ 7; 27-20, at 20.[6]

For the fiscal year of 2012, Plaintiff received a PFP rating of five, which corresponded to a 0%

increase; however, no EAS employee received a salary increase due to the continued financial

hardship experienced by the Postal Service.  ECF Nos. 27, ¶ 22; 27-18, ¶ 7; 27-20, at 22.  For the

fiscal year of 2013, Plaintiff received a PFP rating of five, which corresponded to a 0% salary

increase; however, a 1% merit increase was given to EAS employees in lieu of a PFP award.  ECF

Nos. 27, ¶ 23; 27-18, ¶ 8; 27-20, at 24.  As of January 2014, Plaintiff's salary was $54,739.00.

ECF No. 39, at 10, ¶ 1; ECF No. 53, ¶ 1.  Plaintiff was an "Operational Industrial Engineer" at the

beginning of 2014, and his current actual position is a "Maintenance Engineering Specialist."  ECF

Nos. 27, ¶ 1; 39, at 1, ¶ 1; 27-1, at 2; 39, at 12, ¶ 13; 53, ¶ 13.

At the beginning of 2014, the San Juan plant Postal Service facility had two Operational

Industrial Engineer positions.  ECF Nos. 39, at 12, ¶ 13; 53, ¶ 13.  The two OIE positions were

filled by Alexis Adames ("Adames") and Plaintiff.  ECF Nos. 39, at 12, ¶ 13; 53, ¶ 13.  Adames

worked the afternoon to night shift (tour 3) and Plaintiff worked the night shift (tour 1).  ECF Nos.

39, at 12, ¶ 13; 53, ¶ 13.  Around January of 2014, Adames vacated one of the OIEs positions at

---

[5] Plaintiff attempted to qualify this fact by stating that "[t]he action was described as 'Pay for Performance Increase to Base Salary due to time in position 1.91%' because Plaintiff's tenure with the Postal Service was since March 2008." ECF No. 39, ¶ 19.  However, the exhibit that Plaintiff cites to is not fully legible.  See ECF No. 39-13.

[6] Plaintiff attempted to circumvent the local rules (Local Rule 56(c)) by only admitting a portion of the facts alleged by Defendants in paragraphs 21, 22, and 23, and ignoring the rest.  ECF No. 39, at 5, ¶¶ 21–23.  The facts admitted by Plaintiff were admitted, and the rest of the paragraphs were also deemed admitted as Defendants had appropriate record citations.

the San Juan Processing & Distribution Center.  ECF Nos. 27, ¶ 6(d); 39, at 4, ¶ 6(d).[7]  USPS

posted an internal job listing (#74931959) for the vacant OIE position (#70156562).  ECF Nos.

27, ¶ 6(d); 39, at 4, ¶ 6(d).  The work hours of the position were from 3:30 PM until 12:00 AM

(tour 3), but in practice it ran from 3:00 PM until 11:30 PM.  ECF Nos. 27, ¶ 6(d); 39, at 4, ¶ 6(d).

The posting period was from January 28, 2014, to February 12, 2014.  ECF Nos. 27, ¶ 6(d); 39, at

4, ¶ 6(d).  During this period, only USPS employees were eligible to apply for the position.  ECF

Nos. 27, ¶ 6(d); 39, at 4, ¶ 6(d).

Plaintiff and Renee La Borde ("La Borde"), both USPS employees, applied for the OIE

position.  ECF Nos. 27, ¶ 6(e); 39, at 4, ¶ 6(e).  Planet Manager Edelio Galindo ("Galindo") was

the "Selecting Official" for this position that Plaintiff applied for as a lateral transfer and through

the eCareer system.  ECF Nos. 39, ¶ 17; 53, ¶ 17.  Galindo rejected Plaintiff at least as of March

9, 2014, in the eCareer system and sent an automatic generated email dated March 18, 2014, also

rejecting Plaintiff as "not selected."  ECF Nos. 39, ¶ 17; 53, ¶ 17.  Galindo selected La Borde for

the position.  ECF Nos. 27, ¶ 6(e); 39, at 4, ¶ 6(e).  However, on or about March 22, 2014, La

Borde reconsidered and declined the offer for the OIE position.    ECF Nos. 27, ¶ 6(e); 39, at 4, ¶

6(e).  On or about May 7, 2014, USPS posted an external job listing (#77158141) for the OIE

position (#70156562).  ECF Nos. 27, ¶ 6(f); 39, at 4, ¶ 6(f).  The posting period was from May 7,

2014, until May 21, 2014.  ECF Nos. 27, ¶ 6(f); 39, at 4, ¶ 6(f).  During this period, only external

applicants who were not currently employed by USPS were eligible to apply for the position.  ECF

Nos. 27, ¶ 6(f); 39, at 4, ¶ 6(f).  On or about June 28, 2014, Galindo selected Brenda Rivera

("Rivera") from an external pool of candidates to fill the OIE position.  ECF Nos. 27, ¶ 6(g); 39,

at 4, ¶ 6(g).  After selecting Rivera, Galindo sought guidance from Adyani Torres ("Torres"), the

---

[7] Plaintiff qualified this fact in that the Defendants referred to Adames as "her," but Adames is male.  ECF No. 39, at 4, ¶ 6(d).

lead OIE for the Northeast Area, about setting Rivera's starting salary. ECF Nos. 27, ¶ 33; 27-24; 27-31, ¶¶ 1–4.[8] Torres advised Galindo that Rivera could be offered up to 5% more than her current salary, which was $63,000. ECF Nos. 27, ¶ 34; 27-24; 27-31, ¶6.

Rivera is a 34 year old female. ECF Nos. 27, ¶ 9; 39, at 4, ¶ 9. Immediately prior to being hired as an OIE, Rivera worked as a quality engineer at the Autoridad de Acueductos y Alcantarillados (Aqueducts and Sewers Authority). ECF Nos. 27, ¶ 11; 39, at 5, ¶ 11; 27-15, at 6. Her salary as a quality engineer was $63,000. ECF Nos. 27, ¶ 12; 39, at 5, ¶ 12. Rivera's initial salary as an OIE was $66,114. ECF Nos. 27, ¶ 13; 39, at 5, ¶ 13. At the time Rivera was hired, Plaintiff's salary was $54,739. ECF Nos. 27, ¶ 14; 39, at 5, ¶ 14. At this time, she was 32 years old and Plaintiff was 46 years old. ECF Nos. 39, at 16, ¶ 29; 53, ¶ 29. At the time of hiring, Rivera had considerable less experience than Plaintiff. ECF Nos. 39, at 17, ¶ 31; 53, ¶ 31. Additionally, Rivera had a bachelor's degree in engineering from the Polytechnic University of Puerto Rico while Plaintiff had a bachelor's degree in industrial engineering and a master's degree in engineering management from the Polytechnic University of Puerto Rico. ECF Nos. 39, at 17, ¶ 32; 53, ¶ 32; 39-2, at 10; 39-9, at 4–5; 39-36, at 1. The duties or the job description of the duties assigned to the position for which Rivera was selected were the same as Plaintiff's. ECF Nos. 39, at 16, ¶ 30; 53, ¶ 30.

During a conversation at an unspecified time prior to December 2014 between Plaintiff and José Calserrada ("Calserrada"), the acting Manager of In-Plant support at the San Juan P&DC, Plaintiff requested to be assigned to a day shift position and Calserrada agreed. ECF Nos. Nos.

---

[8] Plaintiff has denied Defendants factual paragraphs 33–34. ECF No. 39, at 9–10, ¶¶ 33–34. However, Plaintiff does not support each denial by a record citation as required by the local rules. L.Cv.R. 56(c). Plaintiff makes arguments that do not contradict the facts alleged by Defendants. Plaintiff claims that the facts have no bearing on the central issues at hand but these facts go to Defendants' claim of a legitimate, non-discriminatory motive on multiple claims. Plaintiff also states, without specifying why, that the material cited is not presented in a form that would be admissible evidence. Defendants cite to declarations under penalty of perjury from potential witnesses and to emails that could be presented at trial as admissible evidence. Thus, these facts are admitted.

27, ¶ 4; 39, at 2, ¶ 4; 39, at 16, ¶ 25; 53, ¶ 25; 39-6, at 24.[9]  To accomplish this change, Calserrada

completed a PS Form 1723.  ECF Nos. 39, at 16, ¶ 25; 53, ¶ 25; 39-6, at 25.  Plaintiff and Calserrada

discussed making the change permanent but Calserrada left his position and that never happened.

ECF Nos. 39, at 16, ¶¶ 25–26; 53, ¶¶ 25–26; 39-6, at 25–26.

On December 1, 2014, Theresa O'Keefe ("O'Keefe"), acting Manager in Plant Support,

issued a directive returning Plaintiff to the night shift from 2200-0700.  ECF Nos. 39, at 2, ¶ 5; 27-

8, at 1; 39-5, at 2; 39, at 19, ¶ 40; 53, ¶ 40.  Calserrada admitted that O'Keefe's email order had

the effect of "reverting the assignment that Calserrada did for [Plaintiff] for the day shift in the PS

Form 1723."  ECF Nos. 39, at 19, ¶ 41; 53, ¶ 41.  Calserrada also admitted that he informed

O'Keefe about the day shift assignment he granted to Plaintiff, but nevertheless Plaintiff went back

to work on the night shift.  ECF Nos. 39, at 19, ¶ 41; 53, ¶ 41.

Plaintiff's initial contact with the EEO office was on December 3, 2014.  ECF Nos. 27, ¶

2; 39, at 1, ¶ 2.[10]  On December 15, 2014, Plaintiff completed the "Information for Pre-Complaint

Counseling" form with the U.S. Postal Service referencing O'Keefe as a supervisor.  ECF Nos.

---

[9] Defendants deny without elaboration Plaintiff's additional facts under paragraphs 25 and 26 by generally stating that the statements are based off of hearsay (F.R.E. 801) and not in line with the purposes or requirements of FRCP 56 and Local Rule 56.  ECF No. 53, ¶¶ 25–26.  As Defendants fail to make a more specific argument or explain why this would be true, this denial is rejected as these general arguments are not clearly accurate.  Even if these statements were considered hearsay, they could reasonably be admitted as an opposing party's statement as Calserrada was the acting Manager of In-Plant support at the San Juan P&DC.  See Fed. R. Evid. 801(d)(2).  Nonetheless, there are problems with Plaintiff's citations.  First, Plaintiff's Exhibit F (ECF No. 39-6) is select pages from the official transcript for the deposition of Calserrada.  For ease of reference, the citation here refers to the page number of the official transcript of the deposition, not the page number of the attachment (i.e., page 2 of ECF No. 39-6 will be referred to as page 10, as it is page 10 of the official transcript).  Plaintiff's inclusion of only some pages of the transcript causes problems.  For example, on page 23 of the transcript, the individuals are discussing a man but do not use his name.  Thus, it is not immediately clear who they are discussing.  ECF No. 39-6, at 23.  Moreover, Plaintiff claims that a conversation between Plaintiff and Calserrada occurred in 2014.  While this may have been made clear during the deposition, it is not clear when this conversation took place based on the pages cited to by Plaintiff.  Id. at 23–25.  The year 2014 comes up on page 20, but pages 21–22 are not included.  Id. at 20, 23.  The conversation between Plaintiff and Calserrada is discussed on page 24.  Id. at 24.
[10] Plaintiff argues that he had "contacted the Postal Service EEO Contact center earlier about August 11, 2014."  ECF No. 39, at 1, ¶ 2.  Plaintiff cites to Exhibit OO (ECF No. 39-40), but Exhibit OO is a poor quality photocopy, which is illegible in part, and there is no such date listed there.  See ECF No. 39-40.

39, at 19, ¶ 39; 53, ¶ 39; 39-37.[11]   However, the document was not stamped "received" until December 17, 2014.  ECF Nos. 39, at 19, ¶ 39; 53, ¶ 39; 39-37.

On February 26, 2015, Plaintiff met with representatives of the Postal Service, Galindo and Calserrada, for a redress session before mediator Roberto de Jesús Clavell.  ECF Nos. 39, at 19, ¶ 42; 53, ¶ 42.[12]   EEO Counselor Evette Corchado was on the phone listening, but not participating. ECF Nos. 39, at 19, ¶ 42; 53, ¶ 42.   The parties executed an agreement with the following handwritten text: "[t]he parties agree that José Ruiz has been assigned the position of Maintenance Engineering Specialist EAS-19 position #71010965 effective no later than March 31, 2015. The parties also agree that the above will take care of the request for 'day shift' assignment issue. The parties agree to disagree and state that no agreement has been reached concerning the following three issues: (1) assigning Ruiz a salary equal to that of Brenda Rivera at present time, (2) Retroactive pay since June 2014, (3) damages in the amount of $200,000.00. CASE: Jose Ruiz 1B-007-0007-15, February 26, 2015."  ECF Nos. 39, ¶ 42; 53, ¶ 42.   At this meeting, Galindo stated that Rivera had a larger salary than Plaintiff because Plaintiff entered the Postal Service employ years ago and that nothing could be done about that.  ECF Nos. 39, at 19–20, ¶ 42; 53, ¶ 42.

On March 11, 2015, Plaintiff filed an EEO formal complaint of discrimination with the Postal Service.  ECF Nos. 39, at 20, ¶ 43; 53, ¶ 43.   The complaint was received on March 16, 2015.  ECF Nos. 39, at 20, ¶ 43; 53, ¶ 43.   On April 4, 2015, Plaintiff was ordered back to a night

---

[11] Plaintiff stated that he completed the form on December 1, 2014.  ECF No. 39, at 19, ¶ 39.  However, the form indicates that the "incident or action that prompted you to seek EEO counseling" occurred on December 1, 2015, while the form is dated by Plaintiff as December 15, 2014.  ECF No. 39-37.

[12] Defendants seek to "qualify" the facts under paragraph 42 but only to the fact that the agreement is titled: "ADEA Settlement Agreement Form: In the Matter of Mediation Between:" and is not titled "No Agreement Letter" like Plaintiff alleged.  ECF No. 53, ¶ 42.  The exhibit at issue, Plaintiff's Exhibit O, is titled "NO AGREEMENT LETTER" on the first page, and "ADEA SETTLEMENT AGREEMENT FORM IN THE MATTER OF MEDIATON BETWEEN:" on the second page.  ECF No. 39-15.  Regardless, the title of this agreement is of little consequence.

shift from 2000 hours to 0500 hours by the US Postal Service. ECF Nos. 39, at 20, ¶ 44; 53, ¶ 44.[13]

On April 8, 2015, the USPS accepted for investigation the allegations in Plaintiff's formal complaint of discrimination but gave Plaintiff seven (7) calendar days from the receipt of the letter to object to the accepted issues. ECF Nos. 27, ¶ 6(a); 39, at 2, ¶ 6(a); 27-3, at 1–2. Plaintiff filed an objection to the description of accepted issues on April 16, 2015. ECF Nos. 27, ¶ 6(a); 39, at 2–3, ¶ 6(a); 27-4.

### ii. OIE Hiring Salary Guidelines

In or about 2013, the Postal Service's Recruitment Programs, Diversity and Talent Acquisition unit at headquarters began assisting Operations with recruiting external talent for the OIE position. ECF Nos. 27, ¶ 29; 27-12, ¶ 9; 39, at 7, ¶29.[14] As they began recruiting in 2014, the number of vacant OIE positions was about the same as it was in 2013 because according to information received by Talent Acquisition, many of the selected candidates declined OIE job offers due to the starting salaries. ECF Nos. 27, ¶ 29; 27-12, ¶ 9. In an effort to remain competitive and to recruit highly educated and qualified staff, the Postal Service determined that OIE salary offers needed to reflect the current market value. ECF Nos. 27, ¶ 30; 27-12, ¶ 10. The Postal

---

[13] Defendants attempt to qualify fact paragraph 44 by stating that "[t]he return to night shift was due the operational necessities [f]or the Postal Service." ECF No. 53, ¶ 44. However, Defendants do not provide a citation for this qualification.

[14] Plaintiff denied both Defendants' fact paragraphs 29 and 30. However, while the local rules require a "separate, short, and concise statement of material facts," Plaintiff has laid out a full page and a half response. ECF No. 39, at 7–9, ¶ 29; L.Cv.R. 56(c). Moreover, while Plaintiff makes many arguments and "facts" within this "denial" on why Plaintiff was not hired, these do not contradict the facts proposed by Defendants. Rather, the facts presented by Defendants in paragraphs 29 and 30 can still be true even if the statements made by Plaintiff in the denial were true. ECF Nos. 27, ¶¶ 29–30; 39, at 7–9, ¶¶ 29–30. Additionally, Defendants have a proper citation to the declaration under penalty of perjury by Juan Delgado, the Manager of Human Resources for the Caribbean District, to support these alleged facts. ECF No. 27-18. Lastly, Plaintiff states that the material cited is not presented in a form that would be admissible in evidence because it is a "[s]elf-serving statement prepared for litigation." ECF No. 39, at 9, ¶ 29. However, just because a statement is self-serving does not mean that the material cited is not admissible. Velázquez-García v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 18 (1st Cir. 2007) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000)) ("[A] 'party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.'")

Service conducted an analysis to establish the current market value for the OIE position based on education, years of experience, and location. ECF Nos. 27, ¶ 30; 27-12, ¶ 10. Based on the results from this analysis, a specific OIE salary guideline was created. ECF Nos. 27, ¶ 30; 27-12, ¶ 10. The guidelines had a predetermined salary range that varies based on the location and years of experience. ECF Nos. 27, ¶ 30; 27-12, ¶ 10. The salary guidelines, in 2014, allowed for a salary offer of up to 5% above the highest documented salary. ECF Nos. 27, ¶ 30; 27-12, ¶ 11.[15]

### C. Title VII and ADEA – Failure to Hire Claim

Defendants contend that "Plaintiff's core allegation is that he was subjected to age and sex discrimination when he had a lower salary than Ms. B. Rivera who was recruited to fill external job position #77158141." ECF No. 28, at 16. This is only partially correct. Plaintiff makes it clear in his amended complaint, in regards to his causes of action for Title VII and the ADEA, that he believes he was discriminated against because of his age and sex when USPS failed to hire him for the OIE position and also for assigning increased and enhanced wages and compensation to Rivera. ECF No. 20, ¶¶ 52–53, 62–63. Thus, Plaintiff has alleged two bases for sex and age discrimination under Title VII and the ADEA respectively: failure to hire and wage discrimination. Defendants' do not offer arguments about Plaintiff's failure to hire claim but rather argue only against Plaintiff's wage discrimination claim. ECF No. 28, at 16–20.[16] Therefore, as far as Defendants' motion for summary judgment seeks to dismiss all of Plaintiff's ADEA and Title VII claims, this is denied in regards to the failure to hire claims.

---

[15] Defendants did not include "2014" in their statement of undisputed fact but the declaration of Juan Delgado makes it clear that the salary of up to 5% was part of the 2014 OIE salary guidelines. See ECF No. 27-18, ¶ 11.

[16] Defendants make reference to their "business decision to fill the OIE vacant position from external human resources or outside the Postal Service" in their reply but they still do not address Defendants' failure to hire Plaintiff. ECF No. 52, at 7–8.

### D.     Title VII – Wage Discrimination

"Title VII, specifically 42 U.S.C. § 2000e–16, bars discrimination . . . in federal employment." Rivera v. Dalton, 77 F. Supp. 2d 220, 224 (D.P.R. 1999). Title VII states that "[a]ll personnel actions affecting employees or applicants for employment . . . in the United States Postal Service and the Postal Regulatory Commission . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16. Thus, Title VII bars USPS from discriminating based on sex. See id.; see also Layme v. Matias, 177 F. Supp. 2d 111, 114 (D.P.R. 2001) (citing Soto v. U.S. Postal Service, 905 F.2d 537, 539 (1st Cir.1990); Jensen v. Frank, 912 F.2d 517 (1st Cir.1990)) ("It is well settled that USPS employees may claim damages under Title VII if they are subjected to discriminatory treatment.")

"A plaintiff may demonstrate a sex discrimination claim with circumstantial evidence through the burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and/or by presenting evidence of discrimination on the basis of a prohibited bias under the mixed-motives theory of discrimination." Burns v. Johnson, 829 F.3d 1, 8–9 (1st Cir. 2016) (citing Johnson v. Univ. of P.R., 714 F.3d 48, 53 (1st Cir. 2013); Burton v. Town of Littleton, 426 F.3d 9, 19 (1st Cir. 2005)); Bonilla-Ramirez v. MVM, Inc., Civ. No. CV 15-1586 (PAD), 2017 WL 2712884, at *9 (D.P.R. Mar. 30, 2017). Plaintiff has not provided any facts of direct evidence of discrimination but relies on circumstantial evidence. Thus, Plaintiff's Title VII claim for wage discrimination will be analyzed under both theories

### i.     The **McDonnell Douglas** Framework

Under step one of the McDonnell Douglas framework, "the plaintiff must establish a prima facie case of discrimination." Tyree v. Foxx, 835 F.3d 35, 40 (1st Cir. 2016) (citing Ahmed v. Johnson, 752 F.3d 490, 495–96 (1st Cir. 2014)), cert. denied sub nom. Tyree v. Chao, 137 S. Ct.

1242, 197 L. Ed. 2d 466 (2017). "The elements of *prima facie* proof vary with the nature of the discrimination claim." Monteagudo v. Asociación de Empleados Del Estado Libre Asociado de Puerto Rico, 425 F. Supp. 2d 206, 212 (D.P.R. 2006) (citing McDonnell Douglas v. Green, 411 U.S. 792, 803 n.13 (1973)). If "the plaintiff establishes a prima facie case, 'an inference of discrimination arises, and the burden of production shifts to the defendant to produce evidence that the challenged employment action was taken for a legitimate, non-discriminatory reason.'" Tyree, 835 F.3d at 40 (citing Hicks v. Johnson, 755 F.3d 738, 744 (1st Cir. 2014)). "Once the employer has articulated a sufficient reason, the burden shifts back to the plaintiff." Soto v. Runyon, 13 F. Supp. 2d 215, 220 (D.P.R. 1998). "[T[he plaintiff is left with the burden to prove 'by a preponderance of the evidence that the employer's proffered reason is pretextual and that the actual reason for the adverse employment action is discriminatory.'" Hicks, 755 F.3d at 744 (quoting Johnson v. Univ. of Puerto Rico, 714 F.3d 48, 54 (1st Cir. 2013)).

In order to establish a prima facie case for gender-based wage discrimination under Title VII, Plaintiff must "show[ ] by a preponderance of the evidence that [he] has a job similar to that of higher paid [females]." Rodríguez v. Smithkline Beecham Pharm., Puerto Rico, Inc., 62 F.Supp.2d 374, 382 (D.P.R. 1999) (citing Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992)), aff'd sub nom. Rodríguez v. Smithkline Beecham, 224 F.3d 1 (1st Cir. 2000). Here, it is uncontested that when Rivera was hired for the job, her salary was approximately $10,000 greater than Plaintiff's salary. Moreover, Rivera's OIE position had the same job description as Plaintiff's position. Defendants argue that Plaintiff and Rivera are not "similarly situated employees" because they were hired at different times and have different work history. ECF No. 28, at 19. However, this is unpersuasive at the prima facie stage as neither of these factors affect whether or not the two individuals had similar jobs. Thus, for summary

judgment purposes, Plaintiff has establish a prima facie case for wage discrimination under Title VII and an inference of discrimination arises.

Defendants allege that the legitimate, nondiscriminatory reason for setting Rivera's starting salary at an amount higher than Plaintiff's is that "Rivera was offered a starting salary equal to 5% more than her previous salary pursuant to the OIE salary guideline for Puerto Rico in effect at the time. The OIE salary guideline was designed to recruit from outside Postal highly educated and qualified individuals to the OIE position . . . ." ECF No. 28, at 18. Defendants have provided admissible evidence, through the declaration under penalty of perjury of Juan Delgado, the Manager of Human Resources for the Caribbean District of the Postal Service, to support the OIE salary guideline used to determine Rivera's starting salary. Moreover, Defendants have shown that Rivera's salary was determined using these guidelines as she was offered a salary 5% above her salary at the time of her application. Thus, "the presumption of discrimination evaporates." Santiago–Ramos, 217 F.3d at 54 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)).

At this juncture, it is left to Plaintiff to show that the legitimate, nondiscriminatory reason for setting Rivera's salary higher than that of Plaintiff is actually pretext. See Santiago-Ramos, 217 F.3d at 54 (citing Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir.1999), cert. denied, 528 U.S. 1161 (2000)). At the summary judgment stage, "the plaintiff opposing summary judgment on the sex discrimination claims normally need only provide competent evidence as to the elements of his prima facie case as well as of his claim that the defendant's proffered reasons were pretextual." Soto v. Runyon, 13 F. Supp. 2d at 220. However, Plaintiff did not cite to any evidence of pretext in his memorandum of law for Title VII sex discrimination with respect to his wages. ECF No. 41, 17–19. In other sections of his memorandum, Plaintiff seems to indicate that the guidelines are pretext as he had greater experience and qualifications than Rivera. ECF No.

41, at 10, 21.  Moreover, in his EPA section, Plaintiff argued that the offered reason for the guidelines, that USPS could be more competitive in outside hiring, is pretext as USPS first attempted to hire an employee internally.  <u>Id.</u> at 11.  While both of these arguments are supported by facts and suggest pretext in the context of a failure to hire claim, neither of them go to show that the guidelines were in fact pretext for discriminatory animus in regards to wage discrimination. Plaintiff may have more experience and qualifications but his salary was set by yearly raises since 2008 while Rivera's salary was set by the OIE hiring guidelines.  Although USPS attempted to hire internally first, that does not change the fact that guidelines were used to set Rivera's salary when she was hired externally.  Thus, Plaintiff's wage discrimination claim under Title VII fails under the <u>McDonnell Douglas</u> framework.

### ii.    Mixed-Motive Framework

"Where there is evidence of both discriminatory and non-discriminatory animus, and the plaintiff requests it, the court may evaluate the evidence through the mixed-motive framework set forth in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)." <u>Cerezo-Martin v. Agroman</u>, 213 F. Supp. 3d 318, 325 (D.P.R. 2016) (citing <u>Moron–Barradas v. Dep't of Educ. of the Commonwealth of P.R.</u>, 488 F.3d 472, 480 (1st Cir. 2007)).  The mixed-motives theory, "which applies to cases where multiple motives lie behind an adverse employment action" was "codified by the Civil Rights Act of 1991 at 42 U.S.C. § 2000e-2(m))."  <u>Burns</u>, 829 F.3d at 9 n.9 (citations omitted).  By this statute, "a plaintiff may establish an 'unlawful employment practice' by demonstrating that sex 'was a motivating factor for any employment practice, even though other factors also motivated the practice.'"  <u>Burns</u>, 829 F.3d at 9 n.9 (quoting 42 U.S.C. § 2000e–2(m)).  "Once a plaintiff shows the existence of an impermissible motivating factor, the employer has a limited affirmative defense that does not absolve it of liability, but

restricts the remedies available to a plaintiff." Bonilla-Ramírez v. MVM, Inc., Civ. No. CV 15-1586 (PAD), 2017 WL 2712884, at *10 (D.P.R. Mar. 30, 2017) (citing Burns, 829 F.3d at 9 n.9). This limited affirmative defense is the "opportunity 'to prove by a preponderance of the evidence that it would have made the same decision regardless of the impermissible consideration.'" Cerezo-Martin, 213 F. Supp. 3d at 325 (quoting Diaz v. Jiten Hotel Mgmt., Inc., 671 F.3d 78, 82 (1st Cir. 2012)).

"As the First Circuit Court of Appeals has noted, 'even in mixed-motive cases, plaintiffs must present enough evidence to permit a finding that ... the adverse employment decision was caused at least in part by a forbidden type of bias.'" Cerezo-Martin v. Agroman, 213 F. Supp. 3d at 325 (quoting Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003)). However, Plaintiff's argument under Title VII is lacking. Plaintiff simply states in a conclusory fashion that:

> The record is abundant in circumstantial evidence that Plaintiff was the victim of a hidden deep-seated discrimination, making Plaintiff worthy of his day in Court, before a jury. The fact that Plaintiff, a male, was so brutally discriminated against with the hiring of a young female, along with the other multiple facts discussed above, supply sufficient evidence of sex-based Title VII discrimination under the convincing mosaic of circumstantial evidence approach.

ECF No. 41, at 18. Thus, rather than working through the legal analysis, Plaintiff simply refers to the fact that a young female was hired as well as "multiple facts discussed above," and then makes generalized claims of "deep-seated discrimination" without articulating any other arguments. These arguments are not enough to survive a motion for summary judgment, even under the mixed-motive analysis. Additionally, Plaintiff's argument here discusses the "hiring" of a young female, and does not address wage discrimination. The circumstantial evidence provided in this case, that Plaintiff was more qualified and more experienced than Rivera, is relevant to the failure to hire context rather than the wage discrimination context. Thus, Plaintiff's claim for wage discrimination under Title VII is dismissed with prejudice.

### E.    ADEA – Wage Discrimination

The Age Discrimination in Employment Act ("ADEA") "provides the exclusive federal remedy for age discrimination in employment." Tapia-Tapia v. Potter, 322 F.3d 742, 745 (1st Cir. 2003) (citing Lafleur v. Tex. Dep't of Health, 126 F.3d 758, 760 (5th Cir. 1997); Chennareddy v. Bowsher, 935 F.2d 315, 318 (D.C. Cir. 1991); Zombro v. Baltimore City Police Dep't, 868 F.2d 1364, 1369 (4th Cir. 1989)).   The federal sector provision of the ADEA requires that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in the United States Postal Service . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a); Velázquez-Ortiz v. Vilsack, 657 F.3d 64, 73 (1st Cir. 2011).[17]

Similar to the analysis under Title VII, where there is no direct evidence of discriminatory animus, "the burden of producing evidence is allocated according to the now-familiar *McDonnell Douglas* framework." Greenberg v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Sánchez v. Puerto Rico Oil Co., 37 F.3d 712, 719 (1st Cir.1994)); Richardson v. Mabus, 203 F. Supp. 3d 86, 163 (D. Me. 2016). Under this framework, the plaintiff must first establish a prima facie case of discrimination. Greenberg, 48 F.3d 22, 26; Sanchez, 37 F.3d at 719.  If the plaintiff establishes a prima facie case then the burden of production shifts to the employer, as the burden of persuasion remains at all times with the plaintiff, who must then articulate a legitimate non-discriminatory reason for the adverse employment action.  Mesnick v. General Electric Co., 950 F.2d 816, 823 (1st Cir. 1991) (citing Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1111 (1st Cir. 1989); Menzel v. Western Auto Supply Co., 848 F.2d 327, 328 (1st Cir. 1988); Texas Dep't Of Community Affairs v.

---

[17] Plaintiff's amended complaint cites to "the Age Discrimination in Employment Act, 29 U.S.C. § 621 (ADEA)." ECF No. 20, at 1, 9.  Plaintiff was possibly attempting to cite to all of the ADEA.  Regardless, the correct section of the ADEA for this claim is section 633a, the federal sector provision, as Plaintiff was employed by USPS.

Burdine, 450 U.S. 248, 253, 256 (1981); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990)).  The burden then falls back on the plaintiff, who must show that the employer's reason was a "pretext," thus allowing the factfinder to infer discriminatory animus behind the challenged employment action.  Id.; Rivera Rodríguez v. Sears Roebuck De Puerto Rico, Inc., 367 F. Supp. 2d 216, 223 (D.P.R.) (citations omitted), aff'd, 432 F.3d 379 (1st Cir. 2005).

Plaintiff cannot avoid summary judgment on this claim, similar to Plaintiff's Title VII wage discrimination claim, as Plaintiff has once again failed to provide a pretext argument in regards to his wage discrimination ADEA claim.  Assuming that Plaintiff could establish a prima facie claim, the Defendants have put forth a legitimate, non-discriminatory reason for the adverse employment action: that Rivera's starting salary was based off of the OIE salary guideline at the time of her hiring.  Thus, in order to survive summary judgment, Plaintiff must articulate an argument to show that Defendants' reason was actually pretext.  Plaintiff states that "[t]he shifting of reasons by the Postal Service on why Plaintiff was not selected as discussed above, plus the flat belying by Fineman and Calserrada of Galindo's pretextual reason that Plaintiff was not selected because of his performance . . . ."  ECF No. 41, at 21.  While Plaintiff does indicate a "pretextual reason" here, this is in regards to Plaintiff's failure to hire claim, and does not address wage discrimination under the ADEA.

Without expressing that this argument is in regards to pretext, Plaintiff makes the claim that he was more educated, qualified, and experienced than Rivera.  ECF No. 41, at 20.  This is supported by the facts, as at the time Rivera was hired, she had less experience than Plaintiff.  Additionally, she possessed a bachelor's degree in engineering while Plaintiff possessed a bachelor's degree and master's degree in engineering.  Although the wage disparity may be seen

as unfair, Plaintiff does not bring to the court's attention evidence of discriminatory animus in the wage setting context. Plaintiff's qualifications and experience do not change the established reason for the disparity in salary: Rivera was awarded a salary based on the OIE hiring guidelines whereas Plaintiff's salary was based on yearly raises since his initial employment in 2008. As addressed previously, Plaintiff argues in his EPA section that the guidelines could not have been made for USPS to stay competitive in outside hiring, as they attempted to hire internally first. Yet, this argument fails as even though USPS sought to hire internally first, once an external hire of Rivera was made, the guidelines were used to set her salary. Thus, Plaintiff's ADEA claim for wage discrimination is dismissed with prejudice.

### F. The Equal Pay Act

The Equal Pay Act states that:

> 'No employer ... shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages ... at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....'

Rodríguez v. Smithkline Beecham, 224 F.3d 1, 5–6 (1st Cir. 2000) (quoting 29 U.S.C. § 206(d)(1)). Thus, "[a]n Equal Pay Act plaintiff must make a prima facie showing that the employer paid different wages to an employee of the opposite sex for substantially equal work." Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974); Marcoux v. Maine, 797 F.2d 1100, 1106 (1st Cir. 1986)). For an EPA claim, "it is appropriate to compare the plaintiff's compensation to that of her successors and predecessors." Rivera-Lugaro v. Rullan, 500 F. Supp. 2d 28, 41–42 (D.P.R. 2007) (citing Ingram v. Brink's, Inc.,

414 F.3d 222, 232 n.10 (1st Cir.2005)).  Then, once a prima facie case has been made, "the defendant-employer must establish one of the following affirmative defenses: the wage discrepancy resulted from (i) a seniority system, (ii) a merit system, (iii) a system measuring earnings by quantity or quality of production, *or* (iv) a differential based on a factor other than sex."  Id. (citing 29 U.S.C. § 206(d)(1); Corning Glass Works, 417 U.S. at 196).  "[T]he employer carries the burden of proof, not just production" in regards to the affirmative defenses.  Rivera-Lugaro v. Rullan, 500 F. Supp. 2d 28, 42 (D.P.R. 2007) (citing Corning Glass Works, 417 U.S. at 196; Ingram, 414 F.3d at 232).  As to the fourth affirmative defense, "Congress barred recovery if a pay differential was based 'on any other factor'-reasonable or unreasonable-'other than sex.'"  Smith v. City of Jackson, Miss., 544 U.S. 228, 239 n.11 (2005).

In this case, Plaintiff has established a prima facie claim under the EPA.  It is uncontested that Plaintiff and Rivera are of the opposite sex and both were employed as Operations Industrial Engineers with the same descriptions of their duties.  Defendants do not offer any arguments to suggest that Plaintiff and Rivera did not perform substantially equal work.  Lastly, Plaintiff received around $10,000 less in salary than Rivera.

Defendants seeks to establish an affirmative defense on "a differential based on a factor other than sex."  Here, Defendants argue that Rivera's salary was established by a salary guideline set by the Postal Service Headquarters, which was created in order to try and attract outside individuals to accept OIE positions with the Postal Service.  ECF No. 28, at 11–12.  Rivera's hiring salary was based upon the salary she was receiving in the private sector at the time of the offer of employment from USPS.  Thus, Defendants argue, the difference in salary was because of the guideline, which is a factor other than sex.  Defendants have brought forth admissible evidence to show that there was in fact a salary guideline in place at the time Rivera was hired, which allowed

her to be given an offer up to 5% more than her current salary of $63,000. Thus, Defendants have established an affirmative defense on a factor other than sex for the disparity in salary between Plaintiff and Rivera. Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 176 (D. Mass. 2001), as amended (June 21, 2001) ("Acceptable factors 'other than sex' include experience, prior salary, education, skills which the employer deems useful to the position, and a proven ability to generate higher revenue for the employer's business." (citing Mullenix v. Forsyth Dental Infirmary for Children, 965 F.Supp. 120, 140 (D.Mass. 1996); Dubowsky v. Stern, Lavinthal, Norgaard & Daly, 922 F.Supp. 985, 990 (D.N.J. 1996))); see also Byrd v. Ronayne, 61 F.3d 1026, 1034 (1st Cir. 1995) (granting summary judgment on Plaintiff's EPA claim when the male employee who was paid more than Plaintiff brought significantly more in revenue from clients when joining the firm than Plaintiff).

Plaintiff seems to argue that the wage is unfair given Plaintiff's greater experience and education. ECF No. 41, at 10. Nonetheless, these facts do not address whether USPS had a salary hiring guideline put in place by headquarters. As previously stated, Plaintiff does argue that the reasoning behind the guidelines, that USPS could stay competitive in outside hiring, is pretext because USPS attempted to hire an internal employee prior to seeking an external hire. Id. at 11.[18] While this is unrefuted, and may lead to questions on why Plaintiff was not hired, this does not change the fact that upon making an external hire, Rivera, the salary hiring guidelines established by USPS headquarters were used to determine her salary. Therefore, the fact that this particular USPS location in San Juan attempted to hire internally first does not change that headquarters set OIE salary hiring guidelines for external hires.

---

[18] Plaintiff does not cite to any case law stating that "pretext" is a part of the EPA analysis. Moreover, "[i]f established, any of the four exceptions is a complete defense to conduct that would otherwise violate the statute." Scott, 141 F. Supp. 2d at 176 (citing 29 U.S.C. § 206(d)(1)).

Defendants have established a valid affirmative defense. Thus, Defendants motion for summary judgment in regards to Plaintiff's EPA claim is granted. Plaintiff's EPA claim is hereby dismissed with prejudice.

### G. Retaliation

Plaintiff and Defendants devote minimal time to the retaliation claim in their respective memoranda of law. ECF Nos. 28, at 21–22; 41, at 22–23. Plaintiff does not cite to any case law, even when he lists the alleged prima facie elements for retaliation. ECF No. 41, at 23. Defendants on the other hand, cite solely to cases from the Third Circuit and a case without citation referred to as "Holmes v. USPS, Appeal NO. 012007065." ECF No. 28, at 21–22. Thus, counsel for both sides have put their arguments here at risk. See L.Cv.R. 7(a) (D.P.R. 2009) (regarding submission of motions and supporting memoranda: "[a]ll matters submitted to the Court for consideration shall be presented by written motion filed with the clerk incorporating a memorandum of law, including citations and supporting authorities."); Padilla-Ruiz, 893 F. Supp. 2d at 308 ("Plaintiffs cite to no caselaw affirming this argument, and the Court declines to entertain arguments made with no legal foundation."); Cannon-Atkinson v. Cohen, 95 F. Supp. 2d 70, 74 (D.P.R. 2000) ("[Plaintiff's] brief to this Court relies extensively on federal case law from New Jersey and the Third Circuit Court of Appeals. The Court points out that, at least at present, Puerto Rico is located within the First Circuit not the Third and is certainly not in New Jersey. For obvious reasons, Plaintiff's reliance on New Jersey and Third Circuit case law before this Court is misplaced."), aff'd, 6 F. App'x 44 (1st Cir. 2001).

The Fair Labor Standards Act "contains an antiretaliation provision that forbids employers 'to discharge or in any other manner discriminate against any employee because such employee has *filed any complaint* or instituted or caused to be instituted any proceeding under or related to

[the Act], or has testified or is about to testify in such proceeding, or has served or is about to serve on an industry committee.'" Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 4 (2011) (emphasis in original) (quoting 29 U.S.C. § 215(a)(3)). Under an FLSA claim for retaliation, Plaintiff "must prove (1) that [he] 'engaged in statutorily protected activity' and (2) that [his] employers afterward took 'adverse employment action' against [him] (3) 'as a reprisal for having engaged in the protected activity.'" Uphoff Figueroa v. Alejandro, 597 F.3d 423, 431 (1st Cir. 2010) (quoting Claudio–Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 102 (1st Cir.2004)).

Plaintiff argues that his protected acts were his completion of the document "Information for pre-Complaint counseling" dated December 1, 2014, and his filing of a formal complaint on March 11, 2015. ECF No. 41, at 22.[19] Plaintiff states that the adverse employment actions were when he was ordered back to the night shift by O'Keefe on December 1, 2014, and on April 4, 2015, when the Postal Service "reneged" on the "No Agreement Letter" and once again ordered him back to the night shift. Id.[20] Defendants state that Plaintiff did not have an adverse employment action: "Assuming, arguendo, that Mrs. O'Keeffe was aware of Plaintiff's alleged internal complaints about his salary, her change of Plaintiff's schedule to the night shift was not an adverse employment action. Plaintiff's dayshift assignment was temporary." ECF No. 28, at 22.

_____

[19] As stated above, Plaintiff claims that the form is dated as December 1, 2014; however, the date next to Plaintiff's signature is December 15, 2014. ECF No. 39-37, at 3.
[20] Plaintiff makes an additional argument under a separate section of his retaliation argument titled "Elements of Prima Facie Case" for an adverse employment action that is nonsensical. ECF No. 41, at 23. Plaintiff stated that his protected activity was (1) his protest before Juan Delgado, Manager of Human Resources for the Caribbean District, for Plaintiff's perceived discrimination on August 18, 2014, (2) his initiation of his information for pre-complaint counseling form on December 1, 2014, and (3) his filing of a Formal complaint on March 11, 2015. Id. Plaintiff now claims that "the employer subjected the plaintiff to an adverse employment action, that is was not selected for the Tour 2 (day time shift of OIE vacated by Alexis Adames[)]." Id. Thus, it appears that Plaintiff is arguing that because of his three alleged protected activities, he was not selected for the OIE job vacated by Alexis Adames. Yet, Rivera was selected for the open OIE job vacated by Alexis Adames on or about June 28, 2014. Plaintiff's argument is not logical as the alleged "adverse employment action" took place prior to the protected activities, the earliest of which Plaintiff alleges took place on August 18, 2014.

Defendants' statement in regards to a temporary assignment is accurate only in regards to Plaintiff's first claim of retaliation. The facts show that Calserrada agreed to move plaintiff to a day shift position but while Plaintiff and Calserrada discussed making the change permanent, that never happened. Thus the change was not permanent but only temporary. However, Defendants do not address Plaintiff's second claim of retaliation. Mainly, that after Plaintiff filed a formal complaint, he was once again moved to a night shift position despite the "No Agreement Letter," which stated that Plaintiff would be assigned to a Maintenance Engineering Specialist position in order to "take care" of the request to be assigned to a day shift. Defendants have not put forth facts to show that this change was only temporary.

The First Circuit has stated that determining whether an action is materially adverse "'requires a case-by-case inquiry' and 'must be cast in objective terms.'" Thayer Corp. v. Reed, No. 2:10-CV-00423-JAW, 2011 WL 2682723, at *16 (D. Me. July 11, 2011) (quoting Blackie v. State of Me., 75 F.3d 716, 725 (1st Cir. 1996)). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Blackie v. State of Me., 75 F.3d 716, 725 (1st Cir. 1996). Thus, "[t]ypically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." Blackie v. State of Me., 75 F.3d 716, 725 (1st Cir. 1996) (citations omitted).

Defendants argue that Plaintiff's day shift assignment was temporary, and that although Plaintiff may have been displeased with the change of hours, this did not constitute an adverse

employment action.[21]  As expressed above, there is only evidence of a temporary assignment in regards to Plaintiff's first day shift assignment but not his second.  Additionally, this is a situation in which the employer "took something of consequence" from the employee, as Plaintiff would need to adjust his daily schedule if he is required to work nights instead of days and Plaintiff has requested to be moved to a day shift multiple times.  Thus, a trier of fact could hold that being switched from a day shift to a night shift is an adverse employment action.  In sum, Defendants' request to dismiss Plaintiff's first retaliation claim (December 1, 2014 incident) under the FLSA is granted, but denied as to the second retaliation claim (April 4, 2015 incident).[22]

In his response in opposition, Plaintiff now claims that he has a claim for retaliation "under the Fair Standards Labor Act Anti-Retaliation provision 29 U.S.C. § 215(a)(3) and Title VII 42 U.S.C. § 2000e-3(a)."  ECF No. 41, at 22.  However, in Plaintiff's amended complaint, Plaintiff only lists the Fair Labor Standards Act under his retaliation cause of action and makes no mention of retaliation for Title VII.  ECF No. 20, ¶¶ 76–81.[23]  Thus, Plaintiff's retaliation claim going forward will be restricted to the FLSA.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 26) is GRANTED IN PART and DENIED IN PART.  Plaintiff's claims under Section 1981, Section 1983, the FTCA, Title VII for wage discrimination, ADEA for wage discrimination, and the EPA

---

[21] Defendants refer to a case called "Holmes v. USPS" but fail to provide any citation.  ECF No. 28, at 22.

[22] Defendants state in their motion for summary judgment that a retaliation claim under the FLSA is governed by the McDonnell Douglas framework.  ECF No. 28, at 21; Cachola-Bonilla v. Wyndham El Conquistador Resort & Country Club, 577 F. Supp. 2d 566, 583 (D.P.R. 2008); Mogilevsky v. Wellbridge Club Mgmt., Inc., 905 F. Supp. 2d 405, 410–11 (D. Mass. 2012).  While there is precedent to support this, Defendants do not make an explicit claim for a legitimate, non-retaliatory reason and thus such arguments will not be considered here.

[23] The argument for retaliation under the FLSA is the main retaliation argument that Defendants addressed in their motion for summary judgment.  ECF No. 28, at 21–22.  Defendants do make an offhand comment about Plaintiff's retaliation under their Title VII and ADEA argument section, but this does not address Plaintiff's alleged retaliation of being switched back to the night shift but rather that the decision to pay Rivera a salary of $66,144 could not have been retaliation as it occurred before any EEO activity.  Id. at 20.

are hereby DISMISSED WITH PREJUDICE. Plaintiff's claim under USERRA is DISMISSED WITHOUT PREJUDICE. Plaintiff's Title VII and ADEA claims against the United States Postal Service and the United States of America are hereby DISMISSED WITH PREJUDICE. Thus, remaining are Plaintiff's claims for Title VII sex discrimination for failure to hire against the Postmaster General, ADEA for failure to hire against the Postmaster General, and under the FLSA in regards to the second retaliation claim (April 4, 2015 incident). However, Plaintiff's cross motion for partial summary judgment (ECF No. 40) is DENIED. While Plaintiff may have provided facts to survive Defendants' motion for summary judgment on his remaining claims, Plaintiff has not done so fully and completely that the court may enter partial summary judgment in his favor for the remaining claims. There are material issues of fact in dispute as to the remaining claims that fall within the province of a jury to evaluate at trial.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 29th day of June, 2018.

s/Marcos E. López
U.S. Magistrate Judge